**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **TYIAVORY JACKSON,** ) | **NO. CV 20-01932 SVW (KS)** |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **REPORT AND RECOMMENDATION OF** |
| ) | **UNITED STATES MAGISTRATE JUDGE** |
| **DR. ARTHUR BLAIN, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

This Report and Recommendation is submitted to the Honorable Stephen V. Wilson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order No. 05-07 of the United States District Court for the Central District of California.

**INTRODUCTION**

Before the Court for resolution is Defendants' Motion for Summary Judgment On Plaintiff's Complaint or, in the Alternative, Partial Summary Judgment. (Dkt. No. 63.)

On February 27, 2020, Plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint (the "Complaint") against Arthur Blain, a doctor

1

employed by the California Department of Corrections and Rehabilitation ("CDCR"), Cheng Wu, also a doctor employed by the CDCR, and Armenta Tiggs-Brown, a CDCR physician assistant.  (Dkt. No. 1.)

On August 19, 2020, Defendants jointly filed a motion to dismiss the Complaint and a motion to strike the Complaint.  (Dkt. Nos. 28, 29.)  On November 12, 2020, after briefing was completed, the Court denied the motion to strike, but granted, in part, the motion to dismiss.  (Dkt. No. 40.)  The Court found *inter alia* that the Complaint failed to state a claim against Defendant Wu and dismissed the allegations against Defendant Wu with leave to amend.  (*Id.* at 15-16, 20-22.)  The Court directed Plaintiff to file an amended complaint that articulated "specific factual allegations" of a constitutional violation committed by Defendant Wu within 21 days.  (*Id.* at 21.)  Alternatively, the Court warned Plaintiff that, if he did not file an amended complaint within the allotted time, "the Court will assume that Plaintiff has abandoned his claims against Defendant Wu, and the Court will order Defendants Tiggs-Brown and Blain to file an Answer to the Complaint as amended by this Order."  (*Id.*)

On November 24, 2020, Defendants Blain and Tiggs-Brown filed an Answer to the Complaint.  (Dkt. No. 41.)  On December 28, 2020, having received no amended complaint before the deadline, the Court issued a Case Management and Scheduling Order, which initiated pretrial discovery and motion practice.  (Dkt. No. 42.)

On October 21, 2021, remaining Defendants Blain and Tiggs-Brown filed a Motion for Summary Judgment (the "Motion" [Dkt. No. 63]) accompanied by a Memorandum ("Mem.") (*id.* at 9), four declarations (Dkt. Nos. 65-68), and a Statement of Uncontroverted Facts and Conclusions of Law.  ("Dfts' SUF" [Dkt. No. 69].)  On March 14, 2022, Plaintiff filed an Opposition to the Motion ("Oppo." [Dkt. No. 83]) accompanied by a Statement of

Uncontroverted Facts and Conclusions of Law ("Pltf's SUF" [Dkt. No. 84[1]]), a Declaration [of] Points and Facts Within Defendant Armenta Tiggs-Brown's Responses to Plaintiff's Special Interrogatories (Dkt. No. 86), and a Declaration [of] Points and Facts Within Defendant Arthur Blain's Responses to Plaintiff's Special Interrogatories.  (Dkt. No. 87.)  On April 1, 2022, Defendants filed a Reply to Plaintiff's Opposition (the "Reply" [Dkt. No. 90]) and Objections to Plaintiff's Evidence Submitted in Opposition (the "Objections" [Dkt. No. 91]).  The Motion is now fully briefed and under submission to the Court for decision without oral argument.

## ALLEGATIONS OF THE COMPLAINT

In the Complaint, as amended by the Court's November 12, 2020 Order (Dkt. No. 40), Plaintiff sues Arthur Blain, at all relevant times the Chief Medical Executive at California State Prison, Los Angeles County ("CSP-LAC") in Lancaster, California, in both his individual and official capacities.  (Dkt. No. 1 (Complaint) at 2:26—3:1.)  Plaintiff also sues Armenta Tiggs-Brown, a physician assistant ("PA") employed at CSP-LAC at all relevant times, in both her individual and official capacities.  (*Id.* at 3:2-5.)  Plaintiff alleges that the events giving rise to this suit occurred at CSP-LAC.  (*Id.* at 2:19-21.)

The Complaint asserts that Plaintiff was at all relevant times an inmate in the custody of the CDCR and housed at CSP-LAC.  (*Id.* at 2:17-19.)  Plaintiff is a "43-year-old paraplegic man" who suffered a gunshot wound to his lumbar spine in 1993 that rendered him "paralyzed from the waist down." (*Id.* at 2:21-3:11.)  At all relevant times, Plaintiff "was required to wear mobility aids, take pain medications and immunal depressants [sic], and sleep on special bedding." (*Id.* at 2:23-25.)  Plaintiff suffers from "osteo and psoriatic arthritis, spinal stenosis, neuroforaminal narrowing, bulging disc, nerve impingement, bullet lodgment in the spinal cord, [and] ligamentum flavum hypertrophy of the spine." (*Id.* at 3:11-14.)

---

[1]  Dkt. Nos. 84 and 85 are duplicate filings.

1    As a result of these conditions, a neurosurgeon recommended a spinal fusion of
2    Plaintiff's cervical spine with morphine "to alleviate pain." (*Id.* at 3:15-18.) Physicians at the
3    California Medical Facility in Vacaville, California, where Plaintiff was apparently previously
4    housed, "followed the neurosurgeon's recommendations and prescribed Plaintiff a daily dose
5    of morphine, methadone, and baclofen for muscle spasms." (*Id.* at 3:19-21.)

6

7    On November 6, 2017, Plaintiff was transferred to CSP-LAC. (*Id.* at 3:22-23.) At that
8    time, Plaintiff "was receiving 30 mg morphine morning and night, 35 mg methadone, [and]
9    10 mg baclofen." (*Id.* at 3:23-25.) On November 8, 2017, Defendant Blain reviewed
10   Plaintiff's medical chart, and then approved and prescribed morphine and methadone through
11   December 8, 2017, but discontinued the baclofen. (*Id.* at 3:26-4:3.)

12

13   On December 6, 2017, Plaintiff completed a "sick call slip" in an effort to renew his
14   medications. (*Id.* at 4:4-5.) Plaintiff was referred to Defendant Tiggs-Brown, who "approached
15   [] Plaintiff and said in a callous tone, 'At Lancaster, we do things different [sic] here.'" (*Id.*
16   at 4:8-11.) Defendant Tiggs-Brown allegedly had "direct knowledge of what [] Plaintiff would
17   experience if his opioid analgesics are abruptly discontinued – opioid withdrawal,"[2] but
18   Defendant Tiggs-Brown refused to renew any prescriptions. (*Id.* at 4:12-14.) Plaintiff told
19   Defendant Tiggs-Brown "what would happen to him if his opioid analgesics [weren't]
20   renewed and warned of litigation if he [was] harmed by her actions." (*Id.* at 4:23-24.)
21   Defendant Tiggs-Brown rolled her eyes, made a "patronizing wave," and stormed off, saying
22   that Plaintiff did not know who he was "dealing with." (*Id.* at 4:25-26.)

23

24   On December 7, 2017, Defendant Blain met with a pain management committee that
25   included "[e]very physician and physician assistant" who worked at CSP-LAC. (*Id.* at 4:27—
26

27   _____
     [2]  The Complaint alleges that opioid withdrawal is a severe sickness with symptoms such as vomiting, diarrhea, muscle
28   cramps, aches, and irritability. (Dkt. No. 1 at 4:15-17.) The Complaint further alleges that opioid withdrawal occurs
     when a long-term user of opioids discontinues without a "waning process." (*Id.* at 4:18-19 (errors in original).)

4

5:1.)  At this meeting, Defendant Blain allegedly discussed Plaintiff's medical history and pain medication with Defendant Tiggs-Brown.  (*Id.* at 5:2-3.)  At the conclusion of the meeting, Defendant Blain determined that Plaintiff's "traumatic injuries did not warrant the prescription of [Plaintiff's] opioid analgesics."  (*Id.* at 5:3-5.)

On December 8, 2017, Plaintiff's prescriptions expired and Plaintiff again filled out a slip attempting to renew them.  (*Id.* at 5:6-9.)  That night, Plaintiff began feeling "chills pervade my entire body."  (*Id.* at 5:9-10.)  The following day, Plaintiff "began sweating profusely and breathing rapidly."  (*Id.* at 5:11-12.)  On December 10, 2017, Plaintiff "endured excruciating spinal, joint, and neurological pain . . . ."  (*Id.* at 5:13-14.)  Plaintiff also had a runny nose, nausea, and vomiting.  (*Id.* at 5:14-16.)  On December 11, 2017, Plaintiff experienced hot and cold flashes, sleep deprivation, diarrhea, and muscle cramps.  (*Id.* at 5:17-19.)  Due to "irritation and agonizing body aches," Plaintiff tossed and turned while in bed, which – in conjunction with "faulty bedding" – caused him to become "immobilized."  (*Id.* at 5:20-22.)

On December 11, 2017, Plaintiff was "escorted to the central clinic for [his] withdrawals."  (*Id.* at 5:23-24.)  There, Dr. Blain told Plaintiff, "I understand that you are going through opioid withdrawal symptoms but I will not renew your medications."  (*Id.* at 5:24-25.)  Plaintiff described to Defendant Blain his medical problems and associated pain and requested morphine.  (*Id.* at 5:26-27.)  Dr. Blain replied, "Enbrel is enough for your pain."  (*Id.* at 5:28.)  Enbrel is allegedly "prescribed for autoimmune diseases."  (*Id.* at 6:1.)

On December 12, 2017, Plaintiff was prescribed morphine for eleven additional days.  (*Id.* at 6:3, 17-18.)  On December 20, 2017, Plaintiff informed Defendant Blain in writing of his "inclination" to sue for deliberate indifference.  (*Id.* at 6:19-20.)  On December 24, 2017, Plaintiff received his last dose of morphine.  (*Id.* at 6:21.)

On the basis of these factual allegations, Plaintiff asserts that Defendants Blain and Tiggs-Brown exhibited deliberate indifference to his serious medical needs and suffering, in violation of the Eighth Amendment to the U.S. Constitution.  (*Id.* at 7-8.)  Plaintiff further alleges that Defendant Blain refused to refill Plaintiff's medication after meeting with Defendant Tiggs-Brown to retaliate against Plaintiff for threatening litigation against Tiggs-Brown.  (*Id.* at 7.)

 Plaintiff seeks $150,000 in compensatory, general, and special damages, $150,000 in punitive and exemplary damages, his costs for bringing this lawsuit, reasonable attorney fees, restitution, and an injunction ordering the medical staff at Plaintiff's current prison (the Richard J. Donovan Correctional Facility in San Diego, California) to reinstate his discontinued medications.  (*Id.* at 8-9.)

## THE MOTION

Defendants move for summary judgment on the following grounds: (1) Plaintiff's deliberate indifference claims against Defendants Blain and Tiggs-Brown fail on the merits as a matter of law; (2) Plaintiff's claim for punitive damages against Defendants Blain and Tiggs-Brown in their individual capacities is without merit; (3) Plaintiff's claim for injunctive relief against Defendants Blain and Tiggs-Brown in their official capacities is without merit; and (4) Plaintiff's claim for money damages against Defendants Blain and Tiggs-Brown in their official capacities is barred by the Eleventh Amendment to the U.S. Constitution.  (Motion at 19-31 [Dkt. No. 63].)

In support of the Motion, Defendants filed: (1) a Statement of Uncontroverted Facts and Conclusions of Law ("Defts' SUF") (Dkt. No. 69); (2) the Declaration of Shirley R. Sullinger ("Sullinger Decl.") with Defendants' responses to Plaintiff's interrogatories attached as exhibits (Dkt. No. 65); and (3) the Declarations – with medical records attached as exhibits –

of Defendant Blain ("Blain Decl.") (Dkt. No. 66), Defendant Tiggs-Brown ("Tiggs-Brown Decl.") (Dkt. No. 67), and custodian of records R. Hart ("Hart Decl.") (Dkt. No. 68).

## PLAINTIFF'S OPPOSITION

In his Opposition, Plaintiff challenges Defendants' position on each of the contentions in the Motion. ("Oppo." [Dkt. No. 83].) Specifically, Plaintiff argues that there is sufficient proof that both Defendants Blain and Tiggs-Brown were deliberately indifferent to the suffering Plaintiff endured from withdrawal symptoms when they discontinued his opioid medication without tapering off the doses or providing alternate treatment. (*Id.* at 1-3.)

Plaintiff argues that Defendant Blain's "deliberate indifference to my medical needs . . led to opioid withdrawals and continuous pain[.]" (*Id.* at 3.) As to Defendant Tiggs-Brown, Plaintiff contends that she "is being sued for not preventing the imminent expiration of my pain medication. The expiration of my pain medications without intervention caused me four days of opioid withdrawl symptoms and the exasperation of multiple pains." (*Id.* (errors in original).)

With respect to damages, Plaintiff argues that there is adequate proof that Defendants Blain and Tiggs-Brown "acted with evil motive" in refusing to continue Plaintiff's medications, and that punitive damages are appropriate. (*Id.* at 2.) Plaintiff also argues that his prayer for injunctive relief is properly supported by evidence that his condition "can't be corrected by surgery [and] there is a serious medical need for" his narcotic pain medications (morphine and methadone). (*Id.*) Finally, Plaintiff argues that Defendants Blain and Tiggs-Brown should not be given Eleventh Amendment immunity in their official capacities because they committed constitutional violations. (*Id.*)

\\
\\

Plaintiff argues that he "was a victim of [Defendants'] aggressive campaign to rid opioid analgesics from prison." (Oppo. at 7.) Plaintiff further contends that Dr. Marcelo's used of the word "narcotics" in his Progress Report stating that he was referring Plaintiff's case to Pain Management for review, is evidence of "the campaign to rid non cancer patients of their opioid analgesics" and "their intent to criminalize a medical need." (*Id.*) Plaintiff contends that his medical records are fabricated and "that the medical officials went to great lengths to fabricate documents to 'cover up' Dr. Arthur Blain's Constitutional violations." (*Id.* at 8.) Plaintiff argues that "Defendants' and other additional personal [sic] who attended the Pain Management Committee possessed a medical bias against my medication and made no recommendations suitable to my medical needs." (*Id.*)

Plaintiff also alleges that he did not receive the medication baclofen "when I arrived at CSP-LAC as the result of Dr. Blain's failure to order (prescribe) it. This is Deliberate Indifference." (*Id*. at 9.) According to Plaintiff, "Dr. Blain is aware that treating muscle spasms is a serious need when the patient suffers from paraplegia and severe spinal cord damages." (*Id.*)

Plaintiff filed several documents in support of the Opposition, including: (1) a Statement of Uncontroverted Facts and Conclusions of Law with several attached exhibits consisting of medical records ("Pltf's SUF" [Dkt. No. 84]), and two declarations pointing out alleged inconsistencies in Defendants' Tiggs-Brown's and Arthur Blain's responses to Plaintiff's interrogatories, respectively. (Dkt. Nos. 86, 87.)

## REPLY

In their Reply, Defendants reiterate that Plaintiff fails to present evidence establishing deliberate indifference on the part of either Defendant, and argue that the Opposition raises new allegations that are irrelevant to the pending Complaint and the resolution of the instant

Motion.  (Dkt. No. 90 at 5-10.)  Defendants also argue that Plaintiff has not contested their claims concerning damages and injunctive relief in any material way.  (*Id.* at 10-12.)

## STANDARD OF REVIEW

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The party moving for summary judgment bears the initial burden of offering proof of the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party's burden is met, the party opposing the motion is required to go beyond the pleadings and, by the party's own affidavits or by other admissible evidence, designate "specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e); *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  The party opposing the motion must submit admissible evidence sufficient to establish the elements that are essential to that party's case, and for which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322.

The Court must "view the facts in the light most favorable to the non-moving party and draw reasonable inferences in favor of that party."  *Scheuring v. Traylor Bros., Inc.*, 476 F.3d 781, 784 (9th Cir. 2007).  Where different ultimate inferences reasonably can be drawn, summary judgment is inappropriate.  *Miller*, 454 F.3d at 988.  "At the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence."  *Porter v. California Dep't of Corrections*, 419 F.3d 885, 891 (9th Cir. 2005) (citation omitted).

A factual dispute is "genuine" if there is a sufficient evidentiary basis upon which a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  It is enough that "the claimed factual dispute be shown to

require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968).   A factual dispute is "material" only if it might affect the outcome of the lawsuit under governing law. *Anderson*, 477 U.S. at 248.

Ultimately, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting FED. R. CIV. P. 56(e) advisory committee's note on 1963 amendments); *Int'l Union of Bricklayers v. Martin Jaska, Inc.,* 752 F.2d 1401, 1405 (9th Cir. 1985).   "Evidence may be offered 'to support or dispute a fact' on summary judgment only if it could be presented in an admissible form at trial." *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925-26 (9th Cir. 2014) (citing *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003)); *see also Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) ("Even the declarations that do contain hearsay are admissible for summary judgment purposes because they 'could be presented in an admissible form at trial.'") (citations omitted).

"Mere allegation and speculation do not create a factual dispute for purposes of summary judgment," *Loomis v. Cornish*, 836 F.3d 991, 997, 998 (9th Cir. 2016) (internal quotation omitted), and conclusory statements are similarly insufficient. *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008); *see also Anderson*, 477 U.S. at 249-50 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.   If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted). Instead, to successfully oppose summary judgment, the non-moving party must direct the court's attention to specific facts and establish a prima facie case in opposition to the motion. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1058 (9th Cir. 2009).

\\

1

2

**DEFENDANTS' OBJECTIONS AND EVIDENTIARY RULINGS**

3

The Court now considers Defendants' fifteen objections.

4

5

**Objection No. 1.**  Defendants object to Plaintiff's Statement of Uncontroverted Facts

6

and Conclusions of Law as to Plaintiff's assertion that "Dr. Arthur Blain prescribed my

7

morphine and methadone for 30 days (11-8-17 to 12-8-17)." (Dkt. 91 at 2.)  Defendant argues

8

that Plaintiff misstates the evidence and cites to Dr. Blain's Declaration, where the doctor

9

states that he "refilled the medication order for November 8, 2017, to December 8, 2017," but

10

was simply "continuing preexisting medication from another physician … while the patient

11

was waiting to be seen and evaluated more fully by an LAC physician." (Dkt. No. 66 at 4.)

12

The record is clear that Dr. Blain did refill prescriptions for methadone and morphine during

13

the relevant period. (Dkt. No. 66 at 14-15.)  Defendants have not established that a "refill" is

14

distinguishable from a "prescription" such that Plaintiff misstates the evidence.  **Defendants'**

15

**objection to Plaintiff's statement should be overruled.**

16

17

**Objection No. 2.**  Defendants object to Plaintiff's Statement of Uncontroverted Facts

18

and Conclusions of Law as to Plaintiff's assertion that he "submitted a 7362 for radicular pain

19

on 12/4/17." (Dkt. No. 91 at 2.)  Defendants argue that the statement is irrelevant.  (*Id.*)

20

However, the statement is relevant to the degree of pain Plaintiff suffered and Defendants'

21

reaction to that pain.  **Defendants' objection should be overruled.**

22

23

**Objection No. 3.**  Defendants object to Plaintiff's Statement of Uncontroverted Facts

24

and Conclusions of Law as to Plaintiff's statement that he "was summoned to clinic and

25

referred [to] Armenta Tiggs-Brown by RN Cabiladas for the renewal of my pain medication.

26

The renewal did not happen."  Defendants assert that this statement is irrelevant hearsay

27

lacking a foundation. (Dkt. No. 91 at 2.)  **Defendants' objection, as to the clause "for the**

28

1    **renewal of my pain medication" should be sustained as hearsay. The objection should be**

2    **overruled in all other respects.**

3

4          **Objection No. 4.**  Defendants object to Plaintiff's Statement of Uncontroverted Facts

5    and Conclusions of Law as to Plaintiff's assertion that he "experienced opioid withdrawals

6    from 12/8/17 to 12/12/17 and received first dose of Morphine on 12/12/17 and first dose of

7    Clonidine on 12/13/17 to mitigate the symptoms of opioid withdrawals.   Clonidine was

8    prescribed on 12/11/17 but ordered to be first administered on 12/13/17." (Dkt. No. 91 at 2-

9    3.)  Defendants contend that these statements are argumentative.   The Court disagrees.

10   **Defendants' objection should be overruled**, as the above statements are alleged facts within

11   Plaintiff's subjective knowledge.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration

12   used to support or oppose a motion [for summary judgment] must be made on personal

13   knowledge, set out facts that would be admissible in evidence, and show that the affiant or

14   declarant is competent to testify on the matters stated.").

15

16         **Objection No. 5.**  Defendants object to Plaintiff's Uncontroverted Fact No. 6 at page 3,

17   which states, "I saw Dr. Blain on 12/11/17, where he refused to renew my medication,

18   acknowledged my opioid withdrawals."   Defendant objects to the statement as lacking

19   foundation, as hearsay, as improper argument, and on the ground that it misstates the evidence.

20   (Dkt. No. 91 at 3.)  The Court recognizes there is a factual dispute over when and how many

21   times Plaintiff met in person with Defendant Blain.   However, Plaintiff's statement is

22   supported by Dr. Wu's December 12, 2017 progress notes.  (Dkt. No. 84 at 26 ("[Plaintiff] did

23   not qualify to receive [methadone and morphine], he was seen by Dr. Blain CME in TTA

24   yesterday for this issue.").)  Defendants objection on the grounds that Plaintiff's statement

25   lacks foundation, contains improper argument, and misstates the evidence should be

26   **overruled.**  Moreover, the Court finds that Dr. Wu's progress notes, which are part of a packet

27   of medical evidence verified by the custodian of records for California Correctional Healthcare

28   Services (Dkt. No. 85 at 9-11), qualify as a statement made for medical diagnosis or treatment

that also describes medical history, as well as a record of regularly conducted activity, and Defendants' objection to the statement as hearsay **should also be overruled.**  Fed. R. Civ. P. 803(4) & (6).

**Objection No. 6.**  Defendants object to Plaintiff's Statement of Uncontroverted Facts where Plaintiff states that he "fell in the ADA shower on 12/31/17 and reported injury and pain to my shoulder and spinal cord." (Dkt. No. 91 at 3.)  Plaintiff's statement is irrelevant to his claims of deliberate indifference to opioid withdrawal symptoms made in the Complaint. **Defendants' objection to Plaintiff's statement should therefore be sustained.**  Fed. R. Civ. P. 401, 402.

**Objection No. 7.**  Defendants object to Plaintiff's Statement of Uncontroverted Facts where Plaintiff states, "On 1/2/17, I filled out a 7362 regarding the excruciating pain located in my spine and shoulder (right)." (Dkt. No. 91 at 4.)  Plaintiff's statement is irrelevant to his claims of deliberate indifference to opioid withdrawal symptoms made in the Complaint. **Defendants' objection to Plaintiff's statement should therefore be sustained.**  Fed. R. Civ. P. 401, 402.

**Objection No. 8.**  Defendants object to Plaintiff's Statement of Uncontroverted Facts where Plaintiff states that he "was summoned to the clinic regarding injury/pain in right shoulder and spine from fall in the shoulder." (Dkt. No. 91 at 4.)  Plaintiff's statement is irrelevant to his claims of deliberate indifference to opioid withdrawal symptoms made in the Complaint. **Defendants' objection to Plaintiff's statement should therefore be sustained.** Fed. R. Civ. P. 401, 402.

**Objection No. 9.**  Defendants object to Plaintiff's Statement of Uncontroverted Facts where Plaintiff states, "On 1/4/18 I was [r]eferred to Armenta Tiggs-Brown by Dr. W [sic],

my primary care provider.   I requested CT scan of my right shoulder and spine and the reinstatement of my discontinued pain medications. Armenta Tiggs-Brown denied my requests, stating that there is no need for CT scans of lumbar spine and right shoulder because the CT scans taken of my head and neck came back negative for acute abnormality." (Dkt. No. 91 at 4-5.)   Plaintiff's statement is irrelevant to his claims of deliberate indifference to opioid withdrawal symptoms made in the Complaint.   **Defendants' objection to Plaintiff's statement should therefore be sustained.**   Fed. R. Civ. P. 401, 402.

**Objection No. 10.**   Defendants object to Plaintiff's statement of Uncontroverted facts where Plaintiff states that "Armenta Tiggs-Brown attempted to deceive me by asking, 'How about Trileptal?' Trileptal is the brand name of Oxcarbazepine. My persistence for better treatment caused Armenta Tiggs-Brown to have me escorted out her office and placed in a psyche/suicide hold pending a psyche evaluation. There was no suicide threat.   She wanted me out of her office." (Dkt. No. 91 at 5.)   Plaintiff's statement concerns alleged facts relevant to a fall in the shower and is irrelevant to his claims of deliberate indifference to opioid withdrawal symptoms made in the Complaint.   It is also speculative and improper hearsay. **Defendants' objection to Plaintiff's statement should therefore be sustained.**   Fed. R. Civ. P. 401, 402, 802, 803.

**Objection No. 11.**   Defendants object Plaintiff's Statement of Uncontroverted Facts where plaintiff states, "Due to the denial of the CT scans of my lumbar spine, I experienced deterioration. On 2/11/19, I was admitted to the San Joaquin Hospital Emergency Room for severe back pain and nerve pain." (Dkt. No. 91 at 5-6.)   Plaintiff's statement is irrelevant to his claims of deliberate indifference to opioid withdrawal symptoms made in the Complaint. **Defendants' objection to Plaintiff's statement should therefore be sustained.**   Fed. R. Civ. P. 401, 402.

\\

\\

14

1    **Objection No. 12.**  Defendants object to Plaintiff's Statement of Uncontroverted Facts

2    where Plaintiff states, "Doctors at San Joaquin Hospital ordered a myelogram of lumbar spine.

3    Results show traumatic change from my 9/26/17 CT scan."  (Dkt. No. 91 at 6.)  Plaintiff's

4    statement is irrelevant to his claims of deliberate indifference to opioid withdrawal symptoms

5    made in the Complaint.  **Defendants' objection to Plaintiff's statement should therefore be**

6    **sustained.**  Fed. R. Civ. P. 401, 402.

7

8    **Objection No. 13.**  Defendants object to Plaintiff's Statement of Uncontroverted Facts

9    where Plaintiff states, "Regarding my right shoulder injury sustained in the fall in the shower

10   on 12/31/17, I would later receive a CT scan of my shoulder and see an orthopedic surgeon

11   via Telemedicine.  He determined that I was a candidate for surgery, which I would eventually

12   receive."  (Dkt. No. 91 at 6.)  Plaintiff's statement is irrelevant to his claims of deliberate

13   indifference to opioid withdrawal symptoms made in the Complaint.  **Defendants' objection**

14   **to Plaintiff's statement should therefore be sustained.**  Fed. R. Civ. P. 401, 402.

15

16   **Objection No. 14.**  Defendants object to Plaintiff's Declaration for Points and Facts

17   Within Defendant Armenta Tiggs-Brown's Responses to Plaintiff's Special Interrogatories in

18   its entirety on the grounds that it is improperly offered to show Defendant Tiggs-Brown's state

19   of mind, contains improper argument, and misstates the evidence.  (Dkt. No. 86; Dkt. No. 91

20   at 7.)  **Defendants' objections are overruled.**  Plaintiff's Declaration, which incorporates

21   Defendant Armenta Tiggs-Brown's Responses to Plaintiff's Special Interrogatories,  purports

22   to point out material factual disputes that are relevant to his allegations of deliberate

23   indifference to opioid withdrawal symptoms made in the Complaint.  However, Plaintiff's

24   specific  statements in the Declaration will be accepted by the Court as establishing a genuine

25   dispute of fact only insofar as they are supported by admissible probative evidence.

26

27   **Objection No. 15.**  Defendants object to Plaintiff's Declaration for Points and Facts

28   Within Defendant Dr. Blain's Responses to Plaintiff's Special Interrogatories in its entirety on

the grounds that it is improperly offered to show Defendant Blain's state of mind, contains improper argument, and misstates the evidence.  (Dkt. No. 86; Dkt. No. 91 at 7.)  **Defendants' objections are overruled.**  Plaintiff's Declaration purports to point out live factual disputes that are relevant to his allegations of deliberate indifference to opioid withdrawal symptoms made in the Complaint.  However, Plaintiff's statements in the Declaration will be accepted by the Court as establishing a genuine dispute of fact insofar as they are supported by admissible probative evidence.

## SUMMARY OF UNDISPUTED RELEVANT FACTS

The following facts regarding Plaintiff's medical treatment while at CSP-LAC are undisputed.

On November 6, 2017, Plaintiff was transferred from California Medical Facility to CSP-LAC.  (Blain Decl., ¶ 6 [Dkt. No. 66]; Oppo. at 5 [Dkt. No. 83].)  Plaintiff remained at CSP-LAC from November 6, 2017, to November 17, 2018.  On November 17, 2018, Plaintiff was transferred from CSP-LAC to California Health Care Facility in Stockton.  (Blain Decl., ¶ 7, Ex. No. 1 at 3274-75, 3898-3905.)[3]

Defendant Blain was the Chief Medical Executive at CSP-LAC from approximately October 1, 2017, to March 1, 2018.  (Blain Decl., ¶¶ 2, 5; Dkt. No. 83 at 4.)

\\
\\
\\

---

[3]  Plaintiff's medical records submitted with the Declaration of Dr. Blain are authenticated by a Declaration of Custodian of Records, Jayesh Kunnumal, Health Record Technician.  (*See* Blain Decl., Ex. 1 at Page ID #1307.)  Plaintiff has not objected to the authenticity or admissibility of any of his medical records submitted in support of the Motion and included many of the same records with his Opposition.  It is unclear to the Court why neither Plaintiff nor Defendants requested to file Plaintiff's medical records under seal, given Plaintiff's privacy interests in his medical records.

Defendant Tiggs-Brown worked as a licensed Physician's Assistant at CSP-LAC from approximately October 2017 to October 2019. Defendant Tiggs-Brown last treated Plaintiff as a patient on January 4, 2018 at CSP-LAC. (Tiggs-Brown Decl., ¶¶ 2, 3, 7, 14.)

On November 8, 2017, two days after Plaintiff's transfer to CSP-LAC, Defendant Blain signed a medication refill order for Plaintiff. Dr. Blain refilled the medication order for methadone and morphine from November 8, 2017, to December 8, 2017. (Blain Decl., ¶ 9, Ex. No. 1 at 2665-66.)

On November 27, 2017, Plaintiff saw Dr. James Marcelo, M.D. for Chronic Care follow-up. Dr. Marcelo assessed Plaintiff with the following medical conditions: (1) Peyronie's disease; (2) psoriatic arthritis; (3) status-post rheumatology consult on July 28, 2017; (4) hepatitis C; (5) gastroesophageal reflux disease, commonly known as GERD; (6) vitamin D deficiency; (7) allergic rhinitis; (8) chronic low back pain, and (9) constipation. Plaintiff was taking methadone and morphine for the lower back pain, was wheelchair-bound, and declined a physical exam. (Blain Decl., ¶¶ 10-11, Ex. No. 1 at 3664-65.) Dr. Marcelo advised Plaintiff that his case would be sent for review of the medical necessity of his narcotic medications. (Blain Decl., ¶ 12, Ex. No. 1 at 3664-65.)

On December 7, 2017, Registered Nurse ("RN") Joyce Lee Cabilades saw Plaintiff in co-consultation with Defendant Tiggs-Brown for a follow-up on chronic back pain. Plaintiff said, "I have chronic back, neck pain, I have a bullet in my lumbar area and I've been suffering this for years." RN Cabilades performed a physical exam and noted a normal musculoskeletal exam and diagnosis of chronic pain and recommended that Plaintiff present to the Pain Management Committee for pain management recommendations. (Blain Decl., ¶ 13, Ex. No. 1 at 4962-69; Tiggs-Brown Decl., ¶ 8, Ex. No. 2 at 4962-69.)

\\
\\

17

On December 11, 2017, Plaintiff saw RN Andrew Milano.  RN Milano reported that Plaintiff renewed his request for pain medication for chronic pain.  RN Milano also reported that Plaintiff would be discussed at the upcoming Pain Management Committee.  RN Milano reported Plaintiff was alert and oriented, his breathing was even and unlabored, was not in apparent distress, and propelled himself in a wheelchair without problem.  (Blain Decl., ¶ 14, Ex. No. 1 at 3570.)

Also on December 11, 2017, Defendant Blain attended the Pain Management Committee meeting and discussed Plaintiff's pain medications with other medical providers at CSP-LAC.  The Pain Management Committee reviewed Plaintiff's medical records and discussed the case and appropriate pain management interventions.  They discussed that Plaintiff was not a cancer patient and had been taking morphine and methadone for a lengthy period.  The committee determined that the long-term use of these opioid medications were not indicated, and that Plaintiff should be tapered off them.  The committee decided that Plaintiff would be prescribed Clonidine for withdrawal symptoms.  Once Plaintiff was tapered off of morphine and methadone, he would be monitored for withdrawal symptoms.  (Dkt. No. 1 at 4-5; Blain Decl., ¶ 15, Ex. No. 1 at 5162.)

According to Plaintiff's medical records, on December 12, 2017, he was seen for "Pain medication management."  (Blain Decl., Ex. 1 at 3362.)  The Progress Note states:

> He was on two narcotic medications which are methadone and morphine for a long while, per parent [sic] management to meeting he did not qualify to receive those two necrotic pain medications; he was seen by Dr. Blain CME in TTA yesterday for this issue.  HE understands the plan will be tapered off his morphine in next 10 days.  He [sic] last dosage for dose medication were 4 days ago.  He is able to stand and move few steps in my clinic, besides request her [sic] medication he has no any complaint [sic].

18

(*Id*. at 3662.)  Dr. Blain's treatment notes reflect that "he has been off of all opioids for several days now with no acute withdrawal symptoms," and Clonidine was prescribed for Plaintiff starting on December 11, 2017.  *Id.* Clonidine is prescribed for opioid withdrawal side effects, such as elevated heart rate, anxiety, nervousness, and sweating caused by slowly tapering down the dose of opioids.  Clonidine makes getting to a lower dose and off opioids easier.  (Blain Decl., ¶ 16.)

On December 12, 2017, Plaintiff complained to RN Jessica Buendia about withdrawal symptoms from painkillers.  At that time, RN Buendia reported Plaintiff was taking Clonidine 0.1 mg, twice daily, and had been prescribed the medicine for 10 days from December 13, 2017, to December 23, 2017.  (Blain Decl., ¶ 17, Ex. No. 1 at 3438-44.)  Plaintiff saw Dr. Cheng Wu the same day for a pain medication management visit.  Dr. Wu reported Plaintiff was a 42-year-old inmate with a gunshot wound at the C-spine and L-spine in 1993 or 1999, and was taking two narcotic medications, which were methadone and morphine for a long time. Pursuant to the pain management meeting, Plaintiff did not qualify to receive those two narcotic pain medications.  Dr. Wu reported that Plaintiff understood the plan to taper him off morphine over the next 10 days.  His last dosage of morphine was four days prior.  Dr. Wu reported Plaintiff was able to stand and move a few steps in the clinic. Dr. Wu reported Plaintiff had no complaints, except for his request for narcotic pain medication.  (Blain Decl., ¶ 18, Ex. No. 1 at 3662-64.)

Dr. Wu reported the plan of care was to keep Plaintiff on non-steroidal anti-inflammatory drugs and taper him off morphine over the next 10 days.  On December 12, 2017, Dr. Wu ordered morphine 15 mg for a duration of five days, from December 12, 2017, to December 17, 2017; then another five days from December 17, 2017, to December 22, 2017.  Dr. Wu ordered a medical episodic care follow-up in 20 days, and drug withdrawal follow-up in 60 days.  (Blain Decl., ¶ 19, Ex. No. 1 at 3662.)

On December 15, 2017, Defendant Blain saw Plaintiff in person "for an administrative, not clinical visit" to communicate the Pain Management Committee assessment of Plaintiff's request for chronic opioid therapy. (Blain Decl., ¶ 8.) Dr. Blain communicated to Plaintiff that there was no clinical reason for chronic opioid therapy in a noncancer patient. (*Id.* at ¶ 20.) Dr. Blain states under oath that his physical exam of Plaintiff found no costovertebral angle or CVA, tenderness present bilaterally, and full range of motion. Dr. Blain states that his review of Plaintiff's chart showed: (1) there was no clinical reason for chronic opioid therapy in a non-cancer patient; (2) Plaintiff "was off all opioids . . . from December 9 to December 11, prior to the last dosage ordered by Dr. Wu starting December 12, with no acute withdrawal symptoms, e.g., no sweating, no nausea or vomiting;" (3) Plaintiff would have a follow-up with a mental health provider for depression; and (3) Plaintiff was taking Clonidine 0.5 mg twice daily for withdrawal symptoms. (*Id.*) After December 15, 2017, Dr. Blain did not see Plaintiff as a patient again. (Blain Decl., ¶ 20, Ex. No. 1 at 3661-62.)

Plaintiff's last dose of morphine was on or around December 22 to 24, 2017. Plaintiff continued to be prescribed Clonidine thereafter for any withdrawal symptoms. (Blain Decl., ¶ 22; Hart Decl., Ex. B, pp. 018-19, 24, 31, 37.)

## DISCUSSION

## I. Deliberate Indifference Claims

### A. Applicable Law

The government has an "obligation to provide medical care for those whom it is punishing by incarceration," and the failure to meet that obligation can constitute an Eighth Amendment violation cognizable under Section 1983. *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). In order to prevail on an Eighth Amendment claim for inadequate medical care, a

1  plaintiff must show "deliberate indifference" to his "serious medical needs." *Id.* at 104.  This

2  includes "both an objective standard — that the deprivation was serious enough to constitute

3  cruel and unusual punishment — and a subjective standard — deliberate indifference." *Balla*

4  *v. Idaho*, 29 F.4th 1019, 1025 (9th Cir. 2022) (citation omitted).

6         To meet the objective element of the standard, a plaintiff must demonstrate the existence

7  of a serious medical need.  *Gamble*, 429 U.S. at 104.  Such a need exists if the failure to treat

8  the injury or condition "could result in further significant injury" or cause "the unnecessary and

9  wanton infliction of pain."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (*quoting*

10 *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), *overruled in part on other grounds*

11 *by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997)) (internal quotation marks

12 omitted).  Indications that a plaintiff has a serious medical must include "the existence of an

13 injury that a reasonable doctor or patient would find important and worthy of comment or

14 treatment; the presence of a medical condition that significantly affects an individual's daily

15 activities; or the existence of chronic and substantial pain."  *Colwell v. Bannister*, 763 F.3d

16 1060, 1066 (9th Cir. 2014) (*quoting McGuckin*, 974 F.2d at 1059-60).

18        A prison official is deliberately indifferent under the subjective element of the test only

19 if the official "knows of and disregards an excessive risk to inmate health and safety." *Toguchi*

20 *v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal quotation marks and citation omitted).

21 This "requires more than ordinary lack of due care."  *Farmer v. Brennan*, 511 U.S. 825, 835

22 (1994) (*quoting Whitley v. Albers*, 475 U.S. 312, 319 (1986)) (internal quotation marks

23 omitted).  "[T]he official must both be aware of facts from which the inference could be drawn

24 that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

26        Deliberate indifference "may appear when prison officials deny, delay or intentionally

27 interfere with medical treatment, or it may be shown by the way in which prison physicians

28 provide medical care."  *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

However, neither negligence nor medical malpractice is sufficient.  *Farmer*, 511 U.S. at 835-36 & n.4; *McGuckin*, 974 F.2d at 1059.  Moreover, "a difference of opinion between a prisoner patient and prison medical authorities regarding treatment" does not amount to deliberate indifference.  *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).  Consequently, a plaintiff's opinion that medical treatment was unduly delayed does not, without more, state a claim of deliberate indifference.  *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the defendant-doctor chose was medically unacceptable under the circumstances and chosen in conscious disregard of an excessive risk to plaintiff's health.  *Toguchi*, 391 F.3d at 1058; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (*citing Farmer*, 511 U.S. at 837). In *Farmer*, the United States Supreme Court emphasized that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment."  *Farmer*, 511 U.S. at 834 (internal citations and quotation marks omitted).  Thus, in order to meet the subjective requirement to establish liability for a deliberate indifference claim, "a prison official must have a sufficiently culpable state of mind."  *Id.*

## B.    Analysis

In the Motion, Defendants Blain and Tiggs-Brown argue that Plaintiff cannot establish that either acted with deliberate indifference. (Motion at 19-27.)  Defendant Blain argues that he was an administrator who was "responsible for the overall medical management of patients and ensuring resources were available to meet the needs of the prison population," and as such, had limited contact with Plaintiff and met with him only once.  Defendant Blain also contends that he was actively involved in creating a treatment plan for Plaintiff that addressed any withdrawal symptoms, and that Plaintiff exhibited no withdrawal symptoms when he met with various medical staff.  (*Id.* at 20-25; Dkt. No. 90 "Reply") at 5-7.)  Defendant Tiggs-Brown argues that she only met with Plaintiff twice, first on December 7, 2017, in co-consultation with RN Cabilades, and then on January 4, 2018 after Plaintiff fell in the shower, and that on

neither of these occasions was she deliberately indifferent to a serious medical need.  (Motion at 25-27.)

### 1.  Undisputed Chronology of Plaintiff's Pain Treatment at CSP-LAC

Plaintiff maintains that his allegations of deliberate indifference primarily concern the four-day period from December 8 to 12, 2017, during which the prescriptions for morphine and methadone from a previous doctor at the California Medical Facility – which Defendant Blain had extended once – expired, but before Plaintiff was given Clonidine or any other medication to treat withdrawal symptoms.  (Oppo. at 10-19 [Dkt. No. 83].)  It was specifically on those days that the Complaint alleges Plaintiff experienced severe opioid withdrawal symptoms.  (Dkt. No. 1 at 5:9-19.)  The parties do not dispute the following chronology of Plaintiff's treatment at CSP-LAC.

Plaintiff was transferred to CSP-LAC on November 6, 2022.  (Dkt. No. 83 at 5.)  On November 8, 2022, Defendant Blain signed a medication refill order that extended Plaintiff's prescription for medications he had been receiving at the California Medical Facility (specifically morphine and methadone) through December 8, 2017.  (Blain Decl., ¶ 9, Ex. 1 at 2665-66.)  Then, beginning on December 13, 2017, Plaintiff received extensive care and treatment addressing his medication and condition from several healthcare professionals at CSP-LAC.  (Blain Decl., ¶ 15-20, Ex. No. 1 at 3438-44, 3661-64, 5162.)

It is undisputed that Plaintiff's prescriptions for morphine and methadone expired on December 8, 2017.  (Dkt. No. 1 at 3, 5; Blain Decl., ¶ 9, Ex. No. 1 at 2665-66.)  Plaintiff also alleges that, two days prior, in a meeting with Defendant Tiggs-Brown, she did not renew his medications but instead told him, "At Lancaster, we do things different [sic] here."  (Dkt. No. 1 at 4.)  Starting on December 8, 2017, Plaintiff alleges he experienced "chills pervad[ing his] entire body."  (Dkt. No. 1 at 5:9-10.)  On December 9, 2017, Plaintiff claims he was "sweating

23

profusely and breathing rapidly" (*id.* at 5:11-12), "endured excruciating spinal, joint, and neurological pain" (*id.* at 5:13-14), had a runny nose, nausea, and vomiting (*id.* at 5:14-16), and experienced hot and cold flashes, sleep deprivation, diarrhea, and muscle cramps. (*Id.* at 5:17-19.)  It was also during this time period (specifically, on December 11, 2017) that Defendant Blain allegedly rejected Plaintiff's request for morphine and told Plaintiff, "I understand that you are going through opioid withdrawal symptoms but I will not renew your medications." (*Id.* at 5:24-28.)

On or after December 11, 2017, consistent with the Committee's decision, Plaintiff was prescribed Clonidine to treat opioid withdrawal side effects. (Blain Decl., ¶ 16.)  Plaintiff was also given two five-day prescriptions for morphine to treat withdrawal symptoms, from December 12, 2017, to December 17, 2017; then from December 17, 2017, to December 22, 2017. (Blain Decl., ¶ 19, Ex. 1 at 3662-64.)  Plaintiff took his last scheduled dose of morphine approximately on December 22, 2017.  Plaintiff continued to be prescribed Clonidine thereafter to control  withdrawal symptoms. (Blain Decl., ¶ 22; Hart Decl., Ex. B at 18-19, 24, 31, 37.)

## 2.  Undisputed Evidence Establishes The Existence of Plaintiff's Serious Medical Need

A "serious medical need" includes a condition that could result in the unnecessary and wanton infliction of pain, *see Jett*, 439 F.3d at 1096.  Here, Plaintiff's statements and complaints to prison officials of severe back pain and extreme symptoms of opioid withdrawal undisputedly establish the existence of  a serious medical need.  *Cf. Quintana v. Santa Fe Cty. Bd. of Commissioners*, 973 F.3d 1022, 1029 (10th Cir. 2020) (assuming, without deciding, that severe opioid withdrawal constitutes a serious medical need); *Foelker v. Outagamie Cty.*, 394 F.3d 510, 513 (7th Cir. 2005) (finding that inmate who suffered from severe methadone withdrawal symptoms had a serious medical need).  Indeed, Defendants do not  dispute that

Plaintiff suffered a serious medical condition and do not seek summary judgment on that ground. Thus, the objective component of Plaintiff's deliberate indifference claim is not in dispute. The Court, therefore, focuses its analysis on the subjective prong of the Eighth Amendment standard, i.e., whether a genuine issue of disputed material fact exists as to whether each of the Defendants knew of and disregarded an excessive risk to Plaintiff's health by denying Plaintiff's requests for morphine during the four day period between December 8, 2017 and December 12, 2017.

### 3. Plaintiff Fails to Establish a Triable Issue of Fact As to Defendants' Culpable State of Mind

In the context of prison medical care, deliberate indifference may be "manifested by intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 at 104-05. However, settled law in this Circuit establishes that a prison official is deliberately indifferent only when the official knows of and disregards an excessive risk to inmate health. *Toguchi,* 391 F.3d 1051, 1057-60 (9th Cir. 2004). "Thus the "subjective" component in a deliberate indifference analysis focuses solely "on what a defendant's mental attitude actually was." *Farmer*, 511 U.S. at 839. Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Hutchison v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988).

To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts alleged hi his complaint. *Cafasso, U.S. ex rel. v. Gen. Dynamics, C4 Systems, Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (affirming district court's grant of summary judgment where evidence adduced by plaintiff of retaliation "establish[d] only that this set of events could conceivably have occurred; [but] does not give rise to a reasonable inference that it did in fact occur."). Moreover, the Ninth Circuit has emphasized that it is not the district court's task "to scour the record in search of a genuine issue of triable fact. We rely on the

nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal citation omitted) (affirming grant of summary judgment).  Here, Plaintiff has not set forth evidence sufficient to create a genuine issue of triable fact as to the subjective component of his deliberate indifference claim for either of the two Defendants.

### a.  Defendants' Evidence

### 1.  Defendant Dr. Blain

Dr. Arthur Blain is a physician licensed to practice medicine in California.  (Blain Decl., ¶ 1.)  In his declaration, signed under penalty of perjury, Dr. Blain states that he served as Chief Medical Executive at CSP-LAC from approximately October 1, 2017 to March 1, 2018.  (*Id.,* ¶ 2.)  Dr. Blain states that during his six months at CSP-LAC he saw Plaintiff only once on December 15, 2017 "for an administrative, not clinical visit, for purposes of reviewing medical records and communicating patient results of the Pain Management Committee assessment of the patient's request for chronic opioid therapy."  (Blain Decl., ¶ 8.)

Portions of Plaintiff's authenticated medical records, attached as Exhibit 1 to the Blain Declaration, indicate that on November 8, 2017, Defendant Blain "signed a refill order for Plaintiff "who had just transferred into CSP-LAC and was already on methadone and morphine."  (Blain Decl., ¶ 9; Ex. 1 at 2665-66.)  Dr. Blain "refilled the medication order for November 8, 2017 to December 8, 2017" and he states he "was simply continuing preexisting medication from another physician prison while the patient was waiting to be seen and evaluated more fully by an LAC physician."  (*Id.*)  On November 27, 2017, Plaintiff was seen by Dr. Marcelo, whose treatment notes reflect that on that date Plaintiff had "no complaints" and was "currently on methadone and morphine."  (Blain Decl. ¶ 11.)  Dr. Marcelo "advised [Plaintiff] that his case would be sent to the medication review or MAR Committee for review

of medical necessity of his narcotic medications." (Blain Decl., ¶ 12, Ex. 1 at 3665.) Plaintiff's medications included 20 mg. methadone, once at bedtime; morphine 30 mg extended release, twice daily at daytime and bedtime; and baclofen 10 mg. once at bedtime. (Blaine Decl., Ex. 1 at 3664.)

On December 7, 2017, Plaintiff was seen by RN Joyce Lee Cabiladas, whose Assessment Forms indicate Plaintiff was compliant with his methadone and morphine medications. (Blain Decl., Ex. 1 at 4964.) The records also indicate that Nurse Cabiladas "co-consulted PA Tiggs-Brown today, provider evaluated patient, no new orders given. Pt. will be discussed /referred in pain committee per provider." (Blain Decl., Ex. 1. at 4967.)

On December 11, 2017, Plaintiff was seen in the clinic by RN Andrew Milano. (Blain Decl., ¶ 14, Ex. 1 at 3570.) Nurse Melano's Progress Note indicates that Plaintiff "requested pain medication renewal for chronic pain" and:

> Pt was scheduled in MD line today as well for same issue but was cancelled. Pt was last seen on 12/07/17, was referred by RN Cabiladas to PA Tiggs-Brown. Per notes, pt will be discussed in the Pain Management Committee. Pt. is rescheduled in MD line 12/12/17. Pt informed, agrees & verbalized understanding of POC/tx.

(*Id.*) RN Milano reported that Plaintiff was alert and oriented at that encounter, he propelled himself in a wheelchair without problem, and in no apparent distress or "NAD." (*Id.*)

Also on December 11, 2017, Defendant Blain attended a Pain Management Committee meeting where Plaintiff's pain treatment plan was discussed. (Blain Decl., ¶15.) According to Defendant Blain at that meeting:

> We reviewed the patient's medical records and discussed the case and appropriate pain management interventions. We discussed that the patient was not a cancer patient, and

was taking narcotic pain medications, including morphine and methadone for a long time.  The long-term use of these narcotic and opioid medications were not indicated, and the patient should be tapered off them.  Plaintiff will be prescribed Clonidine for withdrawal symptoms.  Once the patient was tapered off these narcotic medications, he will be monitored for withdrawal symptoms.

(Blain Decl., ¶ 15, Ex. 1 at 5162.)   According to Defendant Blain, Clonidine, which is "prescribed for opioid withdrawal side effects, such as elevated heart rate, anxiety, nervousness, and sweating," was prescribed multiple times by various provided starting on December 11, 2017.  (Blain Decl., ¶ 16.)

On December 12, 2017, Patient was seen by LVN Jessica Buendia who noted the reason for his visit was: "Chronic pain; Drug withdrawal." (Blain Decl., Ex. 1 at 3438.)  At that visit, Plaintiff's list of medications included "Clonidine 0.1 mg., Oral,  Tab . . . Automatic Refill, Order Duration: 10 day, First Dose: on 12/13/17 . . . Stop Date: 12/23/17." (Blain Decl., Ex. 1 at 3439.)  The December 12, 2017 treatment notes also indicate that Plaintiff was scheduled for Follow-Up Appointments for Medical Chronic Care on 12/25/17 for "pain miedcation [sic] issue (Methadone and Morphine)[.]" (Blain Decl., Ex. 1 at 3440.)

Plaintiff was also seen on December 12, 2017, by Dr. Cheng Wu for a pain medication management visit.  (Blain Decl., ¶ 18, Ex. 1 at 3662-3663.)  Dr. Wu's progress notes indicated Plaintiff's "Chief Complaint" was pain management and he had been seen by Dr. Blain the day before.  (Blain Decl., Ex. 1 at 3662.)  Dr. Wu noted that Plaintiff "understand the plan will be tapered off his morphine in next 10 days.  He last dosage for dose medication were 4 days ago.  He is able to stand and move few steps in my clinic, besides request her medication he has no any complaint.  Patient was seen 2 weeks ago by PCP also." (Blain Decl., Ex. 1 at 3662 (errors in original).)  Dr. Wu's notes also reflect that Plaintiff "denies fever, chills, nausea, vomiting, diarrhea and chest pain, shortness breasts [sic]." (Blain Decl., Ex. 1 at 3663.)  Dr. Wu's

physical exam revealed "no acute distress." (Blain Decl., Ex. 1 at 3663.)   In the Assessment/Plan section of the treatment notes, Dr. Wu indicated that he would "give tape off morphine dose next 10 days, patient agrees this management plan," and Dr. Wu ordered a 5-day course of morphine, 15 mg. oral tablets with a drug withdrawal follow up appointment scheduled in 60 days.  (Ex. 1 at  3663.)

On December 15, 2017, Dr. Blain saw Plaintiff in the Triage and Treatment Area (TTA) for an administrative visit, not clinic visit, to communicate the Pain Management Committee assessment of [Plaintiff's] request for chronic opioid therapy.  (Blain Decl., Ex. 1 at 3661-3662.)  Dr. Blain conveyed the Pain Management Committee's assessment that Plaintiff's "chart review showed there was no clinical reason for chronic opioid therapy in a non-cancer patient." (Blain Decl., ¶ 20.)  At that time, Plaintiff had been "off all opioids from December 8-December 11, prior to the last dosage ordered by Dr. Wu starting on December 12, with no acute withdrawal symptoms, e.g., no sweating, no nausea or vomiting." (*Id.*)  Plaintiff was reported to be "sitting in a wheelchair in the exam room comfortable and not in pain[.]" (Blain Decl., Ex. 1 at 3661.)  Plaintiff was reported to be generally "well appearing, in no apparent distress." (*Id.*)

Defendant Blain also states that he did not terminate Plaintiff's prescription for baclofen, a muscle relaxant. (Blain Decl., ¶ 21.)

## 2.  Defendant PA Tiggs-Brown

Defendant Tiggs-Brown is a Physician's Assistant ("PA") licensed in California and was assigned to CSP-LAC from approximately October 2017 to October 2019.  (Tiggs-Brown Decl. ¶¶ 1, 3.)  Tiggs-Brown states under oath that while at CSP-LAC, she saw Plaintiff twice on December 7, 2017, and January 4, 2018, and did not see Plaintiff as a patient again." (*Id.*, ¶ 8.)  On December 7, 2017, just over a month after Plaintiff's transfer to CSP-LAC from

California Medical Facility, RN Joyce Calbilades "performed a physical exam and noted a normal musculoskeletal exam, diagnosis of chronic pain, and recommended [Plaintiff] to the Pain Management Committee for pain management recommendation." (*Id.*) Tiggs-Brown saw Plaintiff again on January 4, 2018, in the CSP-LAC clinic after he returned from a hospital emergency room visit following a fall in the shower.[4] (*Id.* at ¶ 9.) On that occasion, Plaintiff complained of neck pain, and Tiggs-Brown states that:

> We reviewed the hospital CT scans of his cervical spine and brain, which were negative for acute abnormality. Patient had a long history of neck and lumbar back pain. During the visit, the patient continued to request narcotics for pain management. According to the pain management notes, he had been tapered off narcotic pain medications. I offered Tylenol, but he refused to add Tylenol to his medication list. Patient stated three times, "I'm going to do myself in," Patient stated he has no reason to go on if he cannot get narcotics for pain management.
>
>   . . .
>
> [O]n January 4, 2018, Patient denied any muscle spasms to warrant prescribing baclofen. Patient did not report any withdrawal symptoms at that time. Based on his presentation, I assess: (1) Chronic pain—continue current medication, refusing Tylenol or any other non-narcotic pain management and requesting narcotics; (2) Feeling suicidal . . . Mental health evaluation requested for today. Patient will remain in clinic until mental health clearance.

---

[4] The Complaint does not include any allegations of deliberate indifference concerning Plaintiff's January 4, 2018 meeting with Defendant Tiggs-Brown or any other circumstance following the alleged shower accident he refers to in his Opposition. Although alleged for the first time in the Opposition, the Court addresses these allegations in the interests of justice.

1   (Tiggs-Brown Decl., ¶¶ 9, 10.)  Plaintiff's authenticated medical records confirm Defendant

2   Tiggs-Brown's recitation of her treatment encounters with Plaintiff.  (*See* Tiggs-Brown Decl.,

3   ¶ 6, Ex. 2.)

4

5   **b.  Plaintiff's Evidence**

6

7   Plaintiff alleges in the Complaint that on December 8, 2017, Plaintiff's prescriptions

8   expired and Plaintiff again filled out a slip attempting to renew them.  (Dkt. No. 1 at 5.)  That

9   night, Plaintiff began feeling "chills pervade my entire body."  (*Id.*)  The following day,

10  Plaintiff "began sweating profusely and breathing rapidly."  (*Id.*)  On December 10, 2017,

11  Plaintiff "endured excruciating spinal, joint, and neurological pain . . . ."  (*Id.*)  Plaintiff also

12  had a runny nose, nausea, and vomiting.  (*Id.* at 5.)  On December 11, 2017, Plaintiff

13  experienced hot and cold flashes, sleep deprivation, diarrhea, and muscle cramps.  (*Id.*)  Due

14  to "irritation and agonizing body aches," Plaintiff tossed and turned while in bed, which – in

15  conjunction with "faulty bedding" – caused him to become "immobilized."  (*Id.*)

16

17  Based on these allegations, in his Opposition to the Motion, Plaintiff asserts that

18  summary judgment should be denied as to Defendant Blain because "there is a preponderance

19  of evidence that point to Defendant Dr. Blain's indifference to my medical needs by purposely

20  failing to prevent my opioid withdrawal symptoms for four days and not providing alternative

21  treatment for pain relief, a serious medical need."  (Oppo. at 1 [Dkt. No. 83].)  With respect to

22  Defendant Tiggs-Brown, Plaintiff asserts she "was indifferent to my medical needs by failing

23  to prevent the onset of opioid withdrawal symptoms that occurred for four days without

24  alternative treatment provided."  (*Id.* at 1-2.)  According to Plaintiff, "the expiration of my

25  pain medications without intervention caused me four days of opioid withdrawal symptoms

26  and the exasperation [sic] of multiple pains." (*Id.* at 3.)

27  \\

28  \\

31

1

2

      **c. Discussion**

3

4       As an initial matter, Plaintiff contends that the Motion should be denied because he has

5 demonstrated "a preponderance of evidence that point to Defendant Dr. Blain's indifferent to

6 my medical needs" and "sufficient evidence that support[s] Plaintiff's claim that Defendant

7 Tiggs-Brown was indifferent to my medical needs." (Oppo at 1.)  This, however, is not the

8 correct standard to defeat a motion for summary judgment.  *See* Fed. R. Civ. Proc. 56.  As noted

9 above, once the moving party meets its burden, the party opposing the motion must go beyond

10 the pleadings and, by admissible evidence, designate "specific facts showing that there is a

11 genuine issue for trial."  FED. R. CIV. P. 56(e); *Miller v. Glenn Miller Productions, Inc.*, 454

12 F.3d 975, 987 (9th Cir. 2006).

13       Further, at this stage in the proceedings, the Court cannot make credibility

14 determinations or weigh conflicting evidence.  *Porter*, 419 F.3d at 891.  Instead, the Court

15 must view the facts in the light most favorable to Plaintiff, the non-moving party, and draw

16 reasonable inferences in his favor.  *Scheuring*, 476 F.3d at 784.  Viewing all of the declarations

17 and relevant medical records before the Court in this light, the Court can reasonably infer that

18 Defendants Blain and Tiggs-Brown knowingly failed to continue Plaintiff's opioid pain

19 medication for the four-day period from December 8 to 12, 2017, after which an alternate

20 treatment plan specifically addressing opioid withdrawal symptoms was in place and the

21 relevant prescriptions were issued.  *Miller*, 454 F.3d at 988.  Defendants have presented no

22 evidence disputing Plaintiff's statements that he was deprived of opioid pain medication from

23 December 8 to 12, 2017.  *Celotex Corp.*, 477 U.S. at 323.  Defendants have also not proffered

24 evidence indicating there was a medical reason to allow Plaintiff's prescriptions to expire for

25 more than three days before an alternative plan that included treatment for withdrawal

26 symptoms was initiated.  *Hutchinson*, 838 F.2d at 394.

27

28

But the mere fact that the prior pain treatment regimen was abruptly stopped is not, without more, sufficient to defeat the Motion.  In addition to showing a serious medical condition, Plaintiff must also present sufficient admissible evidence to raise a reasonable inference that Defendants acted with the required culpable state of mind when deciding to deny Plaintiff's request to renew his prior opioid pain medications.  *Shapley*, 766 F.2d at 407; *see also Farmer*, 511 U.S. at 834 ("[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment.").

The only evidence Plaintiff points to in an effort to establish that any defendant treated him with deliberate indifference or malice is a single statement by Plaintiff that Defendant Tiggs-Brown allegedly told Plaintiff, in a "callous tone," that "At Lancaster, we do things different [sic] here" when Plaintiff requested a prescription refill.  (Dkt. No. 1 at 4-5.) Plaintiff's characterization of the alleged statement by Defendant Tiggs-Brown as "callous" is not evidence sufficient to create a disputed issue of material fact for trial.  *See Loomis v. Cornish*, 836 F.3d 997-98 ("Mere allegation and speculation do not create a factual dispute for purposes of summary judgment[.]").

Further, to the extent Plaintiff recounts – for the first time in his Opposition – the details of his medical treatment following a fall in the shower in early January 2018 (*see* Oppo. at 5-6), there is no evidence before the Court that this incident was in any way connected to the decision in early December 2017 to change Plaintiff's pain relief medication regimen and discontinue his treatment with opioids.  Nor does Plaintiff present any evidence to suggest that Defendants exhibited any malicious intent in denying or delaying treatment following that fall. After his fall, Plaintiff was promptly taken to the emergency room, where a CT scan showed negative for acute abnormality to Plaintiff's cervical spine and brain.  (Tiggs-Brown Decl., ¶ 9.)  Following the emergency room visit, Plaintiff was seen at CSP-LAC by Dr. Wu, who referred Plaintiff to Defendant PA Tiggs-Brown regarding his injuries.  (Oppo. at 5.) Treatment notes indicate that Plaintiff again requested narcotics for pain management, and PA

Tiggs-Brown offered Tylenol, which Plaintiff refused.  (Tiggs-Brown Decl., ¶ 9.)  In the Opposition, Plaintiff argues that Defendant Tiggs-Brown offered Plaintiff medication that "I specifically verbalized didn't work.  She prescribed anyway and I was forced to suffer for extended durations as a result." (Oppo. at 5-6.) Here, Plaintiff points at most to a disagreement over medical treatment, which is insufficient to sustain an Eighth Amendment deliberate indifference claim. *Franklin*, 662 F.2d at 1344.

Having thoroughly reviewed the parties' moving papers and exhibits, the record evidence does not support a reasonable inference that Defendants Blain and Tiggs-Brown acted either with an evil motive or were recklessly or callously indifferent to Plaintiff's serious medical need. *Farmer*, 511 U.S. at 834.  Taking the evidence in the light most favorable to Plaintiff, as the Court must, the uncontroverted facts indicate that Defendant Blain, following the discussion by the Medical Review Committee, made a medical determination to "taper" Plaintiff off of opioid medications and instead prescribed Clonidine to control Plaintiff's withdrawal symptoms.  (Blain Decl. ¶ 22.)

When Plaintiff requested to continue the prescriptions for morphine and methadone the day before they expired, Dr. Blain declined to refill the prescription based on the Pain Management Committee's assessment that because Plaintiff was not a cancer patient, the continued use of opioids was not medically appropriate.  (Blain Decl. ¶ 20, Ex. 1 at 3661-62.) Instead, Plaintiff was to be "tapered" off of his prior morphine/methadone regimen and was prescribed Clonidine to control withdrawl symptoms.  It is undisputed that Defendant Tiggs-Brown also did not renew Plaintiff's expiring morphine prescription days earlier.  But the record is devoid of any evidence, much less admissible evidence, that Defendant Tiggs-Brown made this decision with any malicious or malevolent intent to cause Plaintiff additional pain or suffering. *Shapley*, 766 F.2d at 407; *Farmer*, 511 U.S. at 834.

34

1    When Defendant Tiggs-Brown saw Plaintiff on January 4, 2018, for injuries Plaintiff

2    suffered from a fall in the shower, Defendant Tiggs-Brown noted that Plaintiff was not

3    exhibiting any signs of withdrawal symptoms. (Tiggs-Brown Decl., ¶ 10.) Plaintiff also argues

4    that after he fell in the shower, he requested a CT scan of his right shoulder and lower spine

5    and again requested the reinstatement of his medication. (Oppo. at 10.) According to Plaintiff,

6    Tiggs-Brown "denied every request without evaluating me." (*Id.*) But as described above, the

7    authenticated records show that Plaintiff had been transported to the emergency room where

8    he did receive a CT scan of his brain and cervical spine. Plaintiff's difference of opinion about

9    the proper course of his medical care does not demonstrate that Defendant Tiggs-Brown acted

10   with a culpable state of mind to create an issue of material fact for trial. *Toguchi*, 391 F.3d at

11   1057-58.

12

13   Similarly, Plaintiff's difference of opinion regarding the need to taper his from his

14   previous opioid medications and the appropriate method to do so, does not, as a matter of law,

15   establish a triable issue of disputed fact for trial. *Id.* Nor does the brief four-day period when

16   he was not prescribed morphine and methadone, in and of itself, establish a disputed issue of

17   fact as to Defendants having any evil or malicious intent to deprive Plaintiff of medication for

18   his chronic pain. Indeed, Plaintiff received medication, Clonidine, to control withdrawal

19   symptoms and his morphine regime, albeit at a lower dosage, was resumed on December 12,

20   2017, for a further ten-day period. Contrary to Plaintiff's allegations in his Complaint, the

21   treatment records reveal no documented evidence of acute withdrawal. (*See, e.g.,* Blain Decl.,

22   Ex. 1; Tiggs-Brown Decl., Ex. 2 .)

23

24   Furthermore, even if the evidence suggests that a reasonable inference could be drawn

25   that Defendants Blain and Tiggs-Brown were negligent in abruptly stopping the morphine

26   treatment (which was resumed on December 12, 2017), negligent medical treatment does not

27   give rise to an Eighth Amendment violation for deliberate indifference. *M.H v. County of*

28   *Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013) ("deliberate indifference claims necessarily

require more than 'mere negligence'").  While the Court must, when assessing a motion for summary judgment, draw all reasonable inferences in Plaintiff's favor, here, the record is simply devoid of any evidence to support a reasonable inference that Defendants Blain and Tiggs-Brown acted with the requisite culpable state of mind to create a disputed issue of material fact for trial as to conduct evincing Defendants' deliberate indifference to Plaintiff's serious medical need.

Accordingly, Plaintiff has failed to establish genuine questions of material fact as to whether Defendants Blain and Tiggs-Brown acted with malice or deliberate intent to deny Plaintiff necessary treatment for his serious medical need from December 8 to 12, 2017, and on that basis, summary judgment on this issue should be GRANTED.

With respect to any period *prior to* December 8, 2017, *or after* December 12, 2017, there is no genuine issue of material fact remaining.  Defendant Blain continued Plaintiff's medications for one month after his arrival at CSP-LAC, and the evidence submitted by Defendants show that by December 13, 2017, the Pain Management Committee had recommended, and Defendant Blain had authorized, an alternate medication schedule that included treatment with Clonodine to control withdrawal symptoms.  (Dkt. No. 1 at 6; Blain Decl., ¶¶ 17, 19, Ex. No. 1 at 3438-44, 3662.)  From that point forward, Plaintiff can only point to a disagreement in treatment, not deliberate indifference to a serious medical need. *Franklin*, 662 F.2d at 1344.  Therefore, to the extent Plaintiff's claims can be construed to allege deliberate indifference during any time period *outside* of December 8 through December 12, 2017, no genuine issue of material fact exists to warrant trial, and the Motion should also be GRANTED.

## II.   Plaintiff's Prayer for Damages and Injunctive Relief

### A.   Punitive Damages Against Defendants in Their Individual Capacities

Defendants assert that Plaintiff's prayer for punitive damages should be denied as a matter of law because Plaintiff has not established an evil motive on the part of either Defendant. (Dkt. No. 63 at 27-28.) The Court agrees. A Plaintiff seeking punitive damages must establish that "the defendant's conduct is . . . motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). As outlined above, the record here is devoid of any evidence, other than Plaintiff's conclusory assertions, to establish that Defendants acted with malice or reckless indifference toward Plaintiff's complaints to cause Plaintiff either increased pain or acute withdrawal symptoms.

Taking the evidence in the light most favorable to Plaintiff, as the Court must, the uncontroverted facts indicate that Defendant Blain, following the discussion by the Medical Review Committee, made a medical determination to "taper" Plaintiff off of opioid medications and instead prescribed Clonidine to control Plaintiff's withdrawal symptoms. (Blain Decl. ¶ 22.) Defendant Tiggs-Brown also did not renew Plaintiff's expiring morphine prescription days earlier. However, here too, Plaintiff fails to present any evidence to support a reasonable inference that these Defendants acted with the necessary culpable state of mind in overseeing Plaintiff's pain management treatment.

Consequently, the Motion should be GRANTED as to Plaintiff's claim for punitive damages.

**B.    Plaintiff's Claim for Injunctive Relief**

In the Complaint, Plaintiff requests injunctive relief in the form of an order requiring medical staff at his "current prison" to immediately reinstate his previous prescriptions. (Dkt. No. 1 at 9.) The Court agrees with Defendants' argument that there is no dispute on any genuine issue of material fact supporting injunctive relief.   Plaintiff is no longer an inmate at CSP-

LAC, but is now housed at Richard J. Donovan Correctional Facility in San Diego, California. (Dkt. No. 72.)  None of the officials at Richard J. Donovan Correctional Facility are parties to this case; the Court does not have jurisdiction to issue such an order.  Further, as fully discussed above, the facts and evidence submitted before the Court establish that, as of December 13, 2017, Plaintiff had a non-opiate, pain medication plan in place – based on the recommendation of a committee of healthcare professionals – that included tapering of the opiates and treatment to control  withdrawal symptoms.  (Dkt. No. 1 at 6; Blain Decl., ¶¶ 17, 19, Ex. No. 1 at 3438-44, 3662.)  Plaintiff cannot establish that prospective injunctive relief is warranted against Defendants Blain or Tiggs-Brown.  *Anderson*, 477 U.S. at 249-50.

Accordingly, the Court recommends that the Motion be GRANTED as to Plaintiff's claim for injunctive relief.

### C.   Money Damages Against Defendants in Their Official Capacities

Defendants argue that Plaintiff improperly sues Defendants in their official capacity for money damages, and these claims are barred by the Eleventh Amendment.  (Dkt. No. 63 at 30-31.)  Defendants are correct.

An "official capacity suit is, in all respects other than name, to be treated as a suit against the entity" and not against the official personally.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Thus, Plaintiff's claims against Defendants – CDCR employees – in their official capacities are properly treated as claims against the State of California itself.  *See Leer v. Murphy*, 844 F.2d 628, 631-32 (9th Cir. 1988) (finding claims against prison correctional officer, warden, and other officials in official capacity to be claims against the state).  Further, the Eleventh Amendment to the U.S. Constitution bars suits against states, state agencies, and state officials in their official capacity.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are

1   'persons' under § 1983."); *Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009) (the
2   CDCR is a state agency entitled to Eleventh Amendment immunity); *Leer*, 844 F.2d at 631-32.
3   Accordingly, claims for money damages against employees of the State of California in their
4   official capacity must be dismissed.  *See Dittman v. California*, 191 F.3d 1020, 1025-26 (9th
5   Cir. 1999) ("The State of California has not waived its Eleventh Amendment immunity with
6   respect to claim brought under § 1983 in federal court . . ."); *Pena v. Gardner*, 976 F.2d 469,
7   472 (9th Cir. 1992) (per curiam) (as amended) (damages claim against state prison officials
8   sued in official capacity barred by Eleventh Amendment).

10  The Court has already recommended that summary judgment be granted on Plaintiff's
11  deliberate indifference claims and his prayer for injunctive relief. Thus, the Motion must
12  likewise be GRANTED as to Plaintiff's claims for monetary damages against Defendants in
13  their official capacities.
14  \\
15  \\
16  \\
17  \\
18  \\
19  \\
20  \\
21  \\
22  \\
23  \\
24  \\
25  \\
26  \\
27  \\
28  \\

**RECOMMENDATION**

For the reasons stated above, IT IS RECOMMENDED that the District Court issue an Order: (1) accepting this Report and Recommendation; (2) GRANTING Defendants' Motion for Summary Judgment as to Plaintiff's deliberate indifference claims against Defendants Dr. Arthur Blain and PA Armenta Tiggs-Brown; (3) GRANTING Defendants' Motion for Summary Judgment as to Plaintiff's requested damages; (4) GRANTING Defendants' Motion for Summary Judgment as to Plaintiff's request of punitive damages; (5) GRANTING Defendants' Motion for Summary Judgment as to Plaintiff's prayer for injunctive relief; and (6) GRANTING Defendants' Motion for Summary Judgment as to Plaintiff's prayer for monetary damages against Defendants' in their official capacity.

DATED: July 29, 2022

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.